IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVIN TANAKA,            (02)<br><br>Defendant. | CR. NO. 18-00030 JMS-02<br><br>ORDER DENYING MOTION FOR COMPASSIONATE RELEASE, ECF NO. 155 |

## ORDER DENYING MOTION FOR COMPASSIONATE RELEASE, ECF NO. 155

### I. INTRODUCTION

Defendant Davin Tanaka ("Defendant") moves pro se, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), for compassionate release from FCI Lompoc ("Lompoc"). The court determines that Defendant has failed to show extraordinary and compelling reasons to warrant release, and, even if he had, the court would deny his Motion based on a consideration of the applicable 18 U.S.C. § 3553(a) factors. Thus, for the following reasons, Defendant's Motion is DENIED.

///

///

## II. **BACKGROUND**

Defendant is a 27-year-old inmate incarcerated at Lompoc with a projected release date of July 23, 2027. *See* https://www.bop.gov/inmateloc/ (last visited November 23, 2020).

On October 24, 2018, Defendant pled guilty without a plea agreement to one count of conspiracy to distribute, and possess with intent to distribute, 50 grams or more of methamphetamine (count 1), and one count of possession with intent to distribute 50 grams or more of methamphetamine (count 3). *See* ECF No. 89; *see also* Presentence Investigation Report ("PSR") ¶ 5, ECF No. 119 at PageID # 412. On March 11, 2019, Defendant was sentenced to a total term of 132 months imprisonment, and a total term of four years of supervised release. ECF Nos. 126 & 129. On May 29, 2020, the Ninth Circuit affirmed the sentence in a memorandum disposition. ECF No. 153.

Defendant submitted a request for compassionate release to Lompoc's Warden on July 27, 2020. *See* ECF No. 155 at PageID # 727. It appears that the Warden has not responded to that request. *Id.* at PageID # 725. On September 14, 2020, Defendant filed the instant pro se Motion seeking compassionate release and

appointment of counsel. *Id.*[1] On November 18, 2020, the Government filed its Response. ECF No. 161.

The court decides the motion without a hearing pursuant to Local Rule 7.1(c).

### III.  DISCUSSION

**A.    Legal Standard**

Defendant moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, which provides as relevant:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, if it finds that—

---

[1] Pursuant to this court's April 21, 2020 Temporary Order Regarding Motions for Compassionate Release During the Covid-19 Pandemic, on September 15, 2020 this court referred Defendant's Motion to the Office of the Federal Public Defender ("FPD") to contact the Defendant to determine if the FPD would represent Defendant. ECF No. 156. On October 13, 2020, the FPD declined to represent Defendant, and the court then denied Defendant's request to appoint counsel. ECF Nos. 159-60. And although the court provided Defendant an option to submit a supplement to his Motion for Compassionate Release, he never did so. *See* ECF No. 160.

>    (i) extraordinary and compelling reasons warrant such a reduction;
>    . . . .
>    and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

Thus, the court may reduce Defendant's sentence if: (1) Defendant has exhausted the required administrative remedies; (2) Defendant has shown that "extraordinary and compelling reasons" warrant the reduction; and (3) the reduction is consistent with applicable Sentencing Commission's policy statements. Here, it appears that Defendant has exhausted his administrative remedies. *See* ECF No. 155.

The United States Sentencing Commission's policy statement, United States Sentencing Guideline ("Guideline") § 1B1.13, provides, as relevant to Defendant, that the court may grant a motion for compassionate release only if, after consideration of the applicable § 3553(a) factors, the court determines that extraordinary and compelling reasons exist to warrant a sentence reduction, the defendant is not a danger to another person or to the community, and a sentence reduction is consistent with the policy statement.

Guideline § 1B1.13 provides three specific examples of extraordinary and compelling reasons for compassionate release—the defendant's terminal medical condition, deterioration of health due to advanced age, and extenuating

family circumstances—along with a fourth, catch-all provision granting discretion to the Bureau of Prisons ("BOP") Director to determine whether other extraordinary and compelling reasons exist.  *See* Guideline § 1B1.13 cmt. n.1(A)-(D).  In a detailed analysis, this court previously determined that the "discretion to determine whether 'other' extraordinary and compelling reasons exist granted by [Guideline § 1B1.13 cmt. n.1(D)] to the BOP Director applies equally to the court when ruling on motions for compassionate release."  *United States v. Hernandez*, 2020 WL 3453839, at *4 (D. Haw. June 24, 2020); *see also United States v. Brooker*, 976 F.3d 228, 237 (2d Cir.  2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release.").  The court incorporates its *Hernandez* analysis here.

**B.     Extraordinary and Compelling Reasons Do Not Warrant Release**

Defendant bears the burden to establish extraordinary and compelling reasons that warrant compassionate release.  *See, e.g.*, *United States v. Bogema*, 2020 WL 6150467, at *3 (D. Haw. Oct. 20, 2020) (citations omitted).  Here, Defendant contends that he should be released from custody because he previously contracted COVID-19 while at Lompoc, and he continues to have body aches, loss of memory, and vision problems.  ECF No. 155 at PageID # 725.

That Defendant previously contracted COVID-19 and has since recovered counsels, albeit slightly, against a finding of extraordinary or compelling reasons to warrant granting the motion for compassionate release. As stated by the CDC in response to the question "[c]an people who recover from COVID-19 be re-infected with SARS-CoV-2?":

> CDC is aware of recent reports indicating that persons who were previously diagnosed with COVID-19 can be re-infected. These reports can understandably cause concern. The immune response, including duration of immunity, to SARS-CoV-2 infection is not yet understood. Based on what we know from other viruses, including common human coronaviruses, some reinfections are expected. Ongoing COVID-19 studies will help establish the frequency and severity of reinfection and who might be at higher risk for reinfection.

https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html (last visited November 23, 2020). The CDC also states that "[c]ases of reinfection of COVID-19 have been reported but are rare." https://www.cdc.gov/coronavirus/2019-ncov/if-you-are-sick/quarantine.html (last visited November 23, 2020).

Some courts have concluded that the dangers associated with COVID-19 are not a ground for relief for someone who had the disease and recovered. *See e.g.*, *United States v. Risley*, 2020 WL 4748513, at *6-7 (E.D. Cal. Aug. 17, 2020); *United States v. Molley*, 2020 WL 3498482, at *2 (W.D. Wash. June 29, 2020);

*United States v. Malecki*, 2020 WL 4013050, at *5 (W.D.N.Y. July 16, 2020);

*United States v. Zubkov*, 2020 WL 2520696, at *3 (S.D.N.Y. May 18, 2020);

*United States v. Hennessey*, 2020 WL 4209020, at *1 (D. Minn. July 22, 2020).

Others have concluded an inmate recovered from COVID-19 may still be able to demonstrate extraordinary circumstances justifying release from custody. *See United States v. Yellin*, 2020 WL 3488738, at *3 (S.D. Cal. June 26, 2020); *United States v. Sholler*, 445 F. Supp. 3d 265, 271 (N.D. Cal. May 15, 2020).

Further, at 27 years old, Defendant is not in a high-risk age group. As stated by the CDC:

> As you get older, your risk for severe illness from COVID-19 increases. For example, people in their 50s are at higher risk for severe illness than people in their 40s. Similarly, people in their 60s or 70s are, in general, at higher risk for severe illness than people in their 50s. The greatest risk for severe illness from COVID-19 is among those aged 85 or older.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited November 23, 2020).

Next, although Lompoc[2] certainly was a COVID-19 "hot spot" several months ago, the same is not true at the present time. BOP reports that 944 inmates

---

[2] FCI Lompoc presently houses 945 inmates. *See* bop.gov/locations/institutions/lof/ (last visited November 23, 2020).

have been tested for COVID-19 at Lompoc, and 701 tests have returned positive. *See* https://www.bop.gov/coronavirus/ (COVID-19 resource page) (last visited November 23, 2020). But BOP currently reports that there are no "confirmed active cases" at Lompoc FCI. *See* https://www.bop.gov/coronavirus/.[3]

The court finds that based on the existing evidence, Defendant has failed to demonstrate that extraordinary and compelling reasons warrant compassionate release.

---

[3] In his Motion, Defendant refers to ongoing litigation involving conditions at Lompoc in the Central District of California. *See* ECF No. 155 at PageID ## 725-26. The court is aware that Dr. Homer Venters filed a report in that litigation on September 25, 2020. *See, e.g., Bogema*, Cr. No. 16-00451 JMS, ECF No. 299-1 (Venters' report). The court has carefully considered Dr. Venters' report and findings. The report describes Lompoc's response to the "unprecedented challenge" of COVID-19 as "exhibit[ing] both significant strengths and serious deficiencies" and goes on to state that "[o]verall, the COVID-19 response at . . . Lompoc is characterized by some evidence-based strategies being superimposed on a grossly inadequate system of health care." *Id.* at PageID # 2327. The report predicts that current shortcomings in Lompac's COVID-19 response are likely to increase the risk of inmates contracting COVID-19 and anticipates those who do become ill are likely to face higher risks of serious illness and death. These concerns around the "health system" at Lompoc "create a strong mandate for more vigorous consideration and processing of compassionate release applications." *Id.* at PageID ## 2328-29.

Although the court is sympathetic to the increased risk facing incarcerated individuals during the pandemic, the present conditions at Lompac do not, at least absent evidence of more serious health complications affecting Defendant, provide a basis for his compassionate release. First, it is unclear from the report that conditions at Lompac are materially worse than at other BOP facilities. Indeed, while access to paper towels is described as worse than at other facilities, the report also indicates that Lompac's creation of a dedicated hospital unit to care for COVID-19 patients is "superior to any other effort [Venters] ha[s] seen in [his] 12 facility COVID-19 inspections." *Id.* at PageID #2318. Moreover, the quantitative evidence before the court demonstrates that COVID-19 at Lompoc is presently well-contained. In short, although the court certainly does not discount the problems facing Lompoc at the present time, Defendant has failed to meet his burden to demonstrate extraordinary and compelling reasons to justify his release given his age and health conditions.

## C.      Section 3553(a) Factors

Even if Defendant had demonstrated that extraordinary and compelling reasons exist to justify compassionate release, the court would deny the motion based on a consideration of the applicable § 3553(a) factors.

As relevant to this case, the § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant;[4] and (2) the need for the sentence imposed "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]"  18 U.S.C. § 3553(a)(1)-(2).  And under the parsimony clause, the court must "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth" in § 3553(a)(2).

Defendant trafficked in substantial quantities of methamphetamine.  *See* PSR ¶¶ 34-37, ECF No. 119 at PageID ## 418-19.  In total, Defendant was

---

[4] As part of the § 3553(a) analysis, the court considers Defendant's post-offense conduct, including his rehabilitation while in custody.  *See Pepper v. United States*, 562 U.S. 476, 491 (2011).

held responsible for 5.84 kilograms of ice. *Id*. at PageID # 419.

Further, Defendant has a conviction in 2011 for Burglary II and a conviction in 2013 for Burglary I. *Id*. ¶¶ 49, 51, ECF No. 119 at PageID ## 420-21. And, Defendant committed the instant offense while serving a term of probation for the Burglary I conviction. *Id*. ¶ 53, ECF No. 119 at PageID # 422.

Finally, Defendant still has the majority of his sentence to serve—he is not scheduled for release from custody until July 23, 2027.[5]

Considering all the § 3553(a) factors, including the offense conduct, Defendant's criminal history, and the time remaining on Defendant's sentence, reducing Defendant's sentence to time served would severely undermine the goals of sentencing set forth in § 3553(a)(2).

## IV. **CONCLUSION**

In sum, the court finds that Defendant has not established the requisite extraordinary and compelling reasons to warrant compassionate release, and, even if he did, the court would deny the motion based on the relevant § 3553(a) factors.

---

[5] When evaluating the § 3553(a) factors, courts consider the amount of time remaining on a defendant's sentence—whether short or long—in determining whether to grant compassionate release. *See e.g.*, *United States v. Pawlowski*, 967 F.3d 327, 330-31 (3d Cir. 2020); *United States v. Chambliss*, 948 F.3d 691, 694 (5th Cir. 2020); *United States v. Maka*, 2020 WL 2544408, at *4 (D. Haw. May 19, 2020); *United States v. Bogdanoff*, 459 F. Supp. 3d 653659 (E.D. Pa. 2020); *United States v. Farmer*, 2020 WL 4057550, at *2 (N.D. Ohio July 20, 2020); *cf. United States v. Moskop*, 2020 WL 1862636, at *1-2 (S.D. Ill. Apr. 14, 2020); *United States v. Steffey*, 2020 WL 3840558, at *1 (D. Nev. July 8, 2020).

Further, for all the reasons set forth above, the court declines to recommend to the BOP that Defendant be placed in home custody.

For the foregoing reasons, Defendant's Motion for Compassionate Release, ECF No. 155, is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 23, 2020.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*United States v. Tanaka*, Cr. No. 18-00030 JMS (02), Order Denying Motion for Compassionate Release, ECF No. 155